J-S60012-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHAWN DAVID CARBAUGH | : | |
| | : | |
| Appellant | : | No. 982 MDA 2019 |

Appeal from the Judgment of Sentence Entered February 1, 2019
In the Court of Common Pleas of Franklin County Criminal Division at
No(s):  CP-28-CR-0001484-2017

BEFORE:   SHOGAN, J., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED JANUARY 28, 2020**

Shawn Carbaugh ("Appellant") appeals from the judgment of sentence imposed after a jury found him guilty of two counts of rape of a child, two counts of indecent assault, and two counts of corruption of minors.[1]  The victim was Appellant's biological daughter, C.B.   On February 1, 2019, Appellant was sentenced to 240 months to 480 months on the child rape counts, and twelve months to eighty-four months on each of the two counts of indecent assault and corruption of minors.  The sentencing court ordered

_____

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  18 Pa.C.S. §§ 3121(c), 3126(a)(7), 6301(a)(1)(ii),  respectively.

the sentences to be served consecutively, resulting in an aggregate term of

incarceration of forty-four to 108 years.[2]  After careful review, we affirm.

The trial court summarized the facts of this case as follows:

The Commonwealth first presented the testimony of Amber Gossert, the victim's counselor.

On December 14, 2016, Ms. Gossert had a scheduled family counseling session with [C.B.] and her mother at their residence. Ms. Gossert was providing therapy for [C.B.],[8] at least in part, for troubles [C.B.] was having at school and at home.  These issues included, "struggling with paying attention in class, focusing on her work, she was struggling with what she identified as anxiety and depression, being around peers."  [C.B.] was also experiencing physical issues, namely defecating and soiling herself.  When Ms. Gossert arrived to begin the therapy session, [C.B] was lying on the couch crying.

[8] C.B., a minor child[,] testified to her date of birth. At the time of this counseling session C.B. was, therefore, twelve years of age.

Ms. Gossert attempted to get C.B. to discuss why C.B. was upset. C.B. asked to speak with Ms. Gossert alone.  C.B. revealed to Ms. Gossert that she had previously "had sexual relations with [Appellant]."  When asked to clarify the term "sexual relations," C.B. told [Ms.] Gossert that [Appellant] put his penis in her vagina. C.B. further advised that this occurred at a prior residence in her parents' bedroom.  Ms. Gossert testified:

[C.B.] had told me that she was in the living room and [Appellant] had told her to go into their room and take her clothes off and then he proceeded to have sex with her.

_____

[2]  The parties subsequently stipulated that the maximum sentence for an indecent assault charge could not exceed sixty months.  Accordingly, on May 6, 2019, the sentencing court entered an amended sentencing order reducing the aggregate sentence to not less than forty-four years and not more than 104 years.  Order, 5/6/19, at unnumbered 1.

*Tr.* 1, p. 41.

After the disclosure from C.B., Ms. Gossert encouraged her to tell her mother. C.B.'s disclosure to her mother was consistent with what she told Ms. Gossert in private. Ms. Gossert advised the family that she was mandated to report this information to authorities; she did so later that same day. This rape occurred approximately three years prior to the disclosure.

Jennifer Brown testified next for the Commonwealth. Ms. Brown was, at all relevant times, an in-take caseworker for the Franklin County Children and Youth Services Agency. Her duties included investigating and assessing reports of child abuse and neglect, including sexual abuse. Part of her duties included making referrals of investigations to law enforcement; this involved completing a "CY-104" form.

Ms. Brown received the report detailing the disclosure by C.B. to Ms. Gossert; Ms. Brown completed a CY-104 referring the matter to law enforcement. She made the referral on December 16, 2016. The referral included C.B.'s assertion that the perpetrator was [Appellant]. As a result of the report and Ms. Brown's referral, [a] forensic interview of C.B. was scheduled for December 21, 2016. C.B. was interviewed at the Children's Advocacy Center (CAC).

The Commonwealth next presented the testimony of Jennifer McNew. During all relevant times in this case, she was a pediatric forensic nurse providing medical exam services for the CAC. She conducted a pediatric forensic exam of C.B. on January 4, 2017. As part of an examination, Ms. McNew writes down "in the patient's words what they say about the details of the assault." Ms. McNew testified:

> [C.B.] said that [Appellant] did something that he shouldn't have. He said, if someone gets suspicious, to say someone else did it. He put something in me that he shouldn't have. His private part down here and [C.B.] pointed to her genital area when she said, down here. In his and my mom's room. When he was done, it was white, sticky and disgusting. It happened once or twice. Second time at his house – I'm sorry, at his mom's house, when I was around 7 or 8-years old. He told me to get

undressed, sit on him and go up and down. He stopped before the stuff went inside of me. He threatened me. It hurt really bad at first and I hated it, then felt good, which sucks. I don't understand.

*Tr.* 1, pp. 103-04.

Ms. McNew related to the jury at length the details of her examination of C.B. She noted a "deep notch" at the 4:00 o'clock position on C.B.'s hymen, which is consistent with her testimony of the incident and level of pain she experienced.

C.B. testified next for the Commonwealth. At the time she testified, she was fourteen years old, and her date of birth was established. She identified [Appellant] as her father. When she was around six, seven, or eight years old, she was at home with [Appellant]; her mother was at work.

She was getting breakfast when [Appellant] told her to go back to his room; he said he wanted to show her something.[9] When C.B. entered his room, [Appellant] told her to "take [her] clothes off and stuff." [Appellant] began to touch C.B. and she tried to get away.

[9] No one else was in the residence at this time.

C.B. testified that [Appellant] touched her with his hands and other parts of his body; however, she was reluctant[10] to describe the "other" parts of his body. C.B. said [Appellant] touched her "somewhere he shouldn't have" with his body part "that he shouldn't have."[11]

[10] C.B. testified, "I don't know what you want to call it. I don't want to talk about this shit." *Tr.1,* p. 140. *See also*, Tr. 1, p.142.

[11] Under cross-examination, C.B. described this as "he put something he should not have inside of me that was his" and "[t]hen he put that inside of me." *Tr. 1*, p. 153, 154.

[C.B.] was unable to stop him because she was scared and not strong enough. Upon further questioning, C.B. testified that [Appellant] touched her "below her stomach" in the "front" of her

- 4 -

body. She described seeing "white stuff" in that area of her body when [Appellant] was done. She described the pain he caused as an "8" on a scale of 0 to 10. [C.B] observed blood coming from her body, "where she goes to the bathroom." *Tr. 1*, p. 144

C.B. described a second incident that occurred at [Appellant's] mother's residence. She and [Appellant] were watching a movie on the couch. [Appellant] "sat her on his lap." [Appellant] undressed C.B., then himself. She described [Appellant] doing to her the "same stuff that happened before" with [Appellant's] privates and the place on her body where she goes to the bathroom. [Appellant] "grabbed her hips and stuff and her arms" to move her body. C.B. described feeling pain and seeing "white stuff." [Appellant] repeatedly told C.B. not to tell anyone, to blame the babysitter, and/or that he would kill her. C.B. believed [Appellant's] threats of violence because she had witnessed his violent acts towards her mother.

The Commonwealth next called to testify M.B., C.B.'s mother. She identified [Appellant] as C.B.'s father. M.B. described the significant physical and emotional issues C.B. experienced since approximately 7 1/2 years of age.

M.B. confirmed that C.B. witnessed [Appellant] assault her in 2013. During the assault, [Appellant] threatened to kill M.B. M.B. also confirmed [Appellant] assaulted her in 2014; C.B. witnessed this as well. M.B. further testified regarding the initial disclosure by C.B., implicating her babysitter in 2014, and the resulting investigation and CAC process.

M.B. further described her daughter's second interview with the CAC, after C.B. disclosed to her that [Appellant] "had hurt her really bad." This occurred sometime in late 2016 into early 2017.

The next witness was Becky Voss. She is a forensic interviewer at the CAC. At the time of her testimony, she had conducted approximately 1,000 forensic interviews. She described the physical layout of the CAC, how children are interviewed, and the importance of her maintaining her objectivity. Ms. Voss testified that she conducted the forensic interview of the victim in 2014[12] and 2016. Ms. Voss identified Commonwealth's Exhibit 8 as a CD containing the audio/visual recording of the 2014 interview of C.B. Ms. Voss also identified Commonwealth's Exhibit 9 as a CD containing the recording of her

forensic interview of C.B. in 2016. These videos were played for the jury's consideration.

> [12] The 2014 CAC interview was related to the false allegations C.B. made against her babysitter as a result of [Appellant's] repeated threats.

The Commonwealth next called Trooper Jeffrey Baney of the Pennsylvania State Police. At the time of C.B.'s disclosure, he was a criminal investigator in the Chambersburg barracks. Trp. Baney initially investigated the allegations against the babysitter in 2014. He ultimately closed that investigation.

After C.B.'s subsequent disclosure of allegations against [Appellant] in 2016, Trp. Baney re-opened the investigation. Trp. Baney testified regarding the filing of the instant charges against [Appellant] and the extreme reaction of [Appellant] at the time he was taken into custody. Trp. Baney also established [Appellant's] date of birth.

The Commonwealth's final witness was Dr. Veronique Valliere. Dr. Valliere is a licensed psychologist working in both the clinical and forensic fields. She had testified in other legal proceedings regarding counter-intuitive victim behavior. She possessed extensive education and experience in providing psychological treatment to both victims and perpetrators of sexual violence. This court found her to be [an] expert in the area of counter-intuitive victim behavior, and she was permitted to offer her opinion in that field to the jury, consistent with 42 Pa.C.S. § 5920. She provided extensive education to the jury consistent with her training, education, and experience.

[Appellant] called one witness in his defense, his mother Connie Wright. Ms. Wright testified that she never had a couch in her living room. She also confirmed that she never contacted the police or the District Attorney regarding this information, despite her son being under these charges for almost two years.

Trial Court Opinion, 7/31/19, at 4–12 (some record references omitted).

Appellant filed a post-sentence motion challenging the sufficiency and weight of the evidence and certain aspects of his sentence. After briefing and limited oral argument, the trial court denied Appellant's post-sentence motion.

This appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for review:

I. Whether the Trial Court erred in finding sufficient evidence for conviction for 18 § 3121[(c)] Rape of Child? (Count 1)

II. Whether the Trial Court erred in finding sufficient evidence for conviction for 18 § 3121[(c)] Rape of Child? (Count 2)

III. Whether the Trial Court erred in finding sufficient evidence for conviction for 18 § 6301[(a)(1)(ii)] Corruption Of Minors - Defendant Age 18 or Above? (Count 5)

IV. Whether the Trial Court erred in finding sufficient evidence for conviction for 18 § 6301 [(a)(1)(ii)] Corruption Of Minors - Defendant Age 18 or Above? (Count 6)

V. Whether the Trial court erred in finding sufficient evidence for conviction for 18 § 3126 [(a)(7)] Indecent Assault Person Less than 13 Years of Age? (Count 7)

VI. Whether the Trial court erred in finding sufficient evidence for conviction for 18 § 3126 [(a)(7)] Indecent Assault Person Less than 13 Years of Age? (Count 8)

VII. Whether the Trial Court erred in finding that the conviction for 18 § 3121 [(c)] Rape of Child was not against the weight of the evidence? (Count 1)

VIII. Whether the Trial Court erred in finding that the conviction for 18 § 3121 [(c)] Rape of Child was not against the weight of the evidence? (Count 2)

IX. Whether the Trial Court erred in finding that the conviction for 18 § 6301 [(a)(1)(ii)] Corruption Of Minors - Defendant Age

18 or Above was not against the weight of the evidence? (Count 5)

X. Whether the Trial Court erred in finding that the conviction for 18 § 6301 [(a)(1)(ii)] Corruption Of Minors - Defendant Age 18 or Above was not against the weight of the evidence? (Count 6)

XI. Whether the Trial Court erred in finding that the conviction for 18 § 3126 [(a)(7)] Indecent Assault Person Less than 13 Years of Age was not against the weight of the evidence? (Count 7)

XII. Whether the Trial Court erred in finding that the conviction for 18 § 3126 [(a)(7)] Indecent Assault Person Less than 13 Years of Age was not against the weight of the evidence? (Count 8)

XIII. Whether the Trial Court erred in finding that the crimes of Indecent Assault Person Less than 13 Years of Age do not merge into the crimes of Rape of Child for sentencing purposes?

XIV. Whether the Trial Court erred in sentencing Defendant to a manifestly excessive sentence?

Appellant's Brief at 4–7 (boldface type and suggested answers omitted).

Appellant's first six issues challenge the sufficiency of the evidence to support his convictions of rape of a child, indecent assault, and corruption of minors. As a general matter,

> our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive

that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Sebolka***, 205 A.3d 329, 336–337 (Pa. Super. 2019) (quoting ***Commonwealth v. Franklin***, 69 A.3d 719, 722–723 (Pa. Super. 2013) (internal quotations and citations omitted)).  "[T]he jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence."  ***Commonwealth v. Ramtahal***, 33 A.3d 602, 607 (Pa. 2011).

As a preliminary matter, we address whether Appellant has preserved these six questions for appellate review.  This Court has stated, "In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's [Pa.R.A.P.] 1925(b) statement **must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient**."  ***Commonwealth v. Stiles***, 143 A.3d 968, 982 (Pa. Super. 2016) (quoting ***Commonwealth v. Garland***, 63 A.3d 339, 344 (Pa. Super. 2013)) (internal quotation marks omitted; emphasis added); ***see***

*also* Pa.R.A.P. 1925(b)(4)(ii) ("The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge."). "Such specificity is of particular importance in cases where, as here, [A]ppellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Garland*, 63 A.3d at 344. Failure to identify what specific elements the Commonwealth did not prove at trial in a Rule 1925(b) statement renders an appellant's sufficiency-of-the-evidence claim waived for appellate review. *See Commonwealth v. Tyack*, 128 A.3d 254, 261 (Pa. Super. 2015) (finding appellant's issues waived where "1925(b) statement simply declared, in boilerplate fashion, that the evidence was insufficient to support his conviction").

Here, the issues enumerated in Appellant's Pa.R.A.P. 1925(b) statement mirror the generic questions outlined in his appellate brief. *See* Appellant's Pa.R.A.P. 1925(b) Statement, 7/1/19, at unnumbered 1–3.[3] Appellant does not identify any element of any conviction that was not proven beyond a reasonable doubt. Additionally, as noted, Appellant's "Statement of The Question Involved" fails to specify the elements of the crimes he is challenging

---

[3] We note that Appellant's brief violates Pa.R.A.P. 2111(a)(10) and (11) in that it does not include a copy of either the trial court opinion or Appellant's Pa.R.A.P. 1925(b) statement. These documents however, were included in Appellant's reproduced record. Because the defects in Appellant's brief do not preclude our review, we do not quash the appeal.

on appeal. Appellant's Brief at 4–7. Consequently, Appellant's non-specific claims challenging the sufficiency of the evidence, which fail to state any elements of any crimes allegedly not proven by the Commonwealth, have not been preserved for appellate review. *Tyack*, 128 A.3d at 261.[4] Further, even if we were to address Appellant's sufficiency claims, we would conclude that the Commonwealth proved each crime beyond a reasonable doubt.

"A person commits the offense of rape of a child . . . when the person engages in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S. § 3121(c). Sexual intercourse, "in addition to its ordinary meaning, includes intercourse *per os* or *per anus*, with some penetration however slight; emission is not required." 18 Pa.C.S. § 3101.

In the argument section of his appellate brief, Appellant claims that the Commonwealth failed to prove the element of penetration beyond a reasonable doubt. Appellant's Brief at 12. Appellant contends that C.B. never testified to penetration and that the nurse who examined C.B. stated that the "notch" in C.B.'s hymen was not definitive evidence of sexual assault. *Id*.

---

[4] While the trial court questioned whether Appellant had preserved his sufficiency challenges for review, *see* Trial Court Opinion, 7/31/19, at 13 n.13, 15 n.14, and 16 n.17, it addressed the merits of Appellant's arguments. "We have held that a trial court's decision to address the topic of sufficiency is of no moment to our analysis because we apply Pa.R.A.P. 1925(b) in a predictable, uniform fashion, not in a selective manner dependent on an appellee's argument or a trial court's choice to address an unpreserved claim." *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (quotation omitted).

At trial, C.B. testified that when she and Appellant were in her parents' bedroom, Appellant touched her with "something he shouldn't have . . . somewhere that he shouldn't have." N.T., 12/13/18, at 141. She recalled telling CAC personnel that he used his privates "below [her] stomach" where she went to the bathroom. *Id*. at 143. Further, after the contact with Appellant, C.B. stated that she was bleeding "where I go to the bathroom." *Id*. at 144. C.B. described the second assault at Appellant's mother's residence as "the same stuff that happened at my mom's house," and confirmed that Appellant put his private parts where she went to the bathroom. *Id*. at 147. Additionally, on cross-examination, C.B. relayed that after Appellant took his clothes off, "he put that inside of me." *Id*. at 154. C.B. testified that she experienced pain "where she goes to the bathroom" after each assault. *Id*. at 147–148. *See Commonwealth v. Johnson*, 180 A3d 474, 479 (Pa. Super. 2018) (victim's testimony, if believed by the fact finder may be sufficient to establish elements of a sexual offense).

Ms. Gossert, C.B.'s counselor, and Ms. McNew, the pediatric forensic nurse, both testified to C.B.'s description of Appellant's behavior. C.B. explicitly told Ms. Gossert that Appellant put his penis in her vagina. N.T., 12/13/18, at 41. Ms. McNew recounted that C.B. stated in her interview that Appellant put something in her that he shouldn't have. "His private part down here and [C.B.] pointed to her genital area when she said, down here." *Id*. at 103.

In sum, Appellant's argument that there was no evidence of penetration is belied by the facts adduced at trial. Accordingly, if we were to reach this issue, we would conclude the Commonwealth proved beyond a reasonable doubt that Appellant had sexual intercourse with C.B., a person under thirteen years of age, during two separate incidents.

Appellant next argues that the evidence was insufficient to convict him of indecent assault. Relevant to this matter, a person is guilty of indecent assault

> if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and . . . the complainant is less than 13 years of age [.]

18 Pa.C.S. § 3126(a)(7). Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

In reaching its guilty verdict on the indecent assault charges, the jury specifically found that Appellant "touch[ed] the complainant's sexual/intimate parts with [Appellant's] sexual/intimate parts" and "touch[ed his] sexual/intimate parts with the complainant's sexual/intimate parts." Verdict Slip, 12/14/18, at unnumbered 1–2 (full capitalization omitted). Appellant's

- 13 -

sole contest to the jury's verdict is that it was based upon C.B.'s testimony was "vague at best." Appellant's Brief at 13.[5]

Again, were we to consider this imprecise claim of error, we would note that C.B. testified that Appellant touched her with his hands and other parts of his body when they were in her parents' bedroom. N.T., 12/13/18, at 140. In the second incident, C.B. revealed that Appellant moved her onto his lap, undressed her, and moved her body, grabbing her "hips and stuff and [her] arms." *Id*. at 147. In her CAC interview, C.B. told Ms. McNew that when the assault in her parent's bedroom was over, "it was white, sticky and disgusting." *Id*. at 104. C.B. then detailed that during the second incident, "[Appellant] told [her] to get undressed, sit on him and go up and down. He stopped before the stuff went inside [her]." *Id*. Clearly, this evidence was sufficient for the jury to conclude that Appellant touched C.B.'s intimate parts with his intimate parts and Appellant touched his sexual/intimate parts with C.B.'s sexual/intimate parts for the purpose of his sexual gratification.

Appellant also levelled a contest to the evidence supporting his corruption of a minor convictions. In order to sustain these convictions, the Commonwealth must prove that a person "being of the age of 18 years and upwards by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18

---

[5] Appellant avers that there was a lack of proof of the elements of both indecent contact and causing a complainant to come into contact with seminal fluid, urine, or feces. As noted above, the jury found Appellant guilty of indecent assault solely on the basis of his indecent contact with C.B.

- 14 -

years of age. . . ." 18 Pa.C.S. § 6301 (a)(1)(ii). Appellant assails the Commonwealth's proof that he committed these crimes on two grounds: the Commonwealth did not prove that Appellant was guilty of either child rape or indecent assault and also failed to demonstrate a "course of conduct." Appellant's Brief at 14. Appellant also reasons that because the alleged course of conduct involved two acts, "one count of Corruption of Minors covered both acts in order to satisfy the course of conduct element of the charge. [Appellant] has been convicted and sentenced for the same crime twice in the same trial." Appellant's Brief at 15.

We would not have found merit to any of these arguments. First, as discussed above, the Commonwealth proved both the child rape and indecent assault offenses beyond a reasonable doubt. Second, Appellant's assertion that the Commonwealth failed to prove a course of conduct by citation to **Commonwealth v. Kelly**, 102 A.3d 1025 (Pa. Super. 2014), is unavailing. In **Kelly**, this Court held that the phrase "'course of conduct'" in the first provision of subsection (a)(1)(ii) imposes a requirement of multiple acts over time" and rejected the Commonwealth's contention that "'course of conduct' could encompass a single act that gives rise to a Chapter 31 offense." **Id**. at 1031–1032. Here, C.B. testified that Appellant sexually assaulted her on two separate occasions at two different locations. The evidence of Appellant's course of conduct was sufficient to sustain the corruption of a minor convictions.

Finally, we note that Appellant cites no legal authority for his theory that he was convicted of two counts of corruption of minors for one act. As we understand Appellant's argument, he asserts that because proof of a course of conduct is a required element for a conviction of this offense, the two acts underlying his convictions and establishing the course of conduct amount to only a singular corruption of minors offense. Because Appellant did not raise this issue in his 1925(b) statement, we decline to further discuss this allegation and note only that the two counts of corruption were based upon two distinct acts.

Appellant's next six allegations of error assert that all of his convictions were against the weight of the evidence. We employ the following standard of review when presented with a weight of the evidence claim:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. McClelland*, 204 A.3d 436, 447 (Pa. Super. 2019) (quoting *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013)).

Appellant's weight of the evidence arguments suffer from the same deficiencies as his sufficiency of the evidence claims. Therefore, Appellant has

- 16 -

waived review of these issues. *See Commonwealth v. Siebert*, 799 A.2d 54, 62 (Pa. Super. 2002) (Appellant's 1925(b) statement alleging merely that the verdict of the jury was against the weight of the credible was too vague to permit review).

In Appellant's post-sentence motion, he baldly asserted that the guilty verdicts were against the weight of the evidence. Appellant's Post-Sentence Motion, 1/11/19, at unnumbered 4–5. In the brief in support of his motion, Appellant conflates his sufficiency and weight challenges. Indeed, Appellant duplicated exactly the sufficiency language to support his weight argument. Appellant's Brief in Support of Post-Sentence Motion, 3/29/19, at unnumbered 2–6. Appellant's failure to articulate a reviewable weight of the evidence issue is further demonstrated in his Pa.R.A.P. 1925(b) statement, wherein he averred simply that "the trial court erred in finding that his [convictions] were not against the weight of the evidence." Appellant's 1925(b) Statement, at unnumbered 1–3. Appellant does not identify any evidence he believes was entitled to greater or lesser weight. Further, Appellant's "Statement of The Question Involved" echoes the unformulated contest to the weight of the evidence. *See* Appellant's Brief at 5–6.

The trial court, while again remarking on the likelihood of waiver, surmised from Appellant's Brief in Support of Post-Sentence Motion that Appellant's weight argument concerned the evidence of penetration. As with his sufficiency argument, Appellant essentially assailed the credibility of C.B.'s

testimony in this regard and highlighted Ms. McNew's declaration that she could not state definitely that the notch in C.B.'s hymen was caused by a sexual assault. The trial court addressed the issue weight as follows:

> All of this evidence [concerning penetration] was presented to and considered by the jury; none of it rises to the level of shocking this court's conscience and certainly does not lead us to conclude a manifest injustice will occur if [Appellant] is not granted a new trial. To do so would require this court [to] ignore the significant contrary direct and circumstantial evidence establishing [Appellant] raped his daughter on two different occasions.

Trial Court Opinion, 7/31/19, at 19.

If we were to review Appellant's weight of the evidence claims, we would agree with the trial court's analysis. In accordance with our standard of review for such an evidentiary challenge, we consider whether the trial court palpably abused its discretion in dismissing Appellant's weight of the evidence claims. We conclude it did not and, therefore, shall not disturb its ruling.[6]

_____

[6] In his appellate brief, Appellant, for the first time, suggests that his mother's testimony that she never had a couch in her living room was credible and, when contrasted to C.B.'s "vague testimony," indicated that the evidence supporting the guilty verdicts of child rape and indecent assault was "weak and inconclusive." Appellant's Brief at 17–18. Because Appellant raises new legal arguments for the first time on appeal, this weight claim is waived. **See Commonwealth v. Jones**, 191 A.3d 830, 835 (Pa. Super. 2018) (stating that "since Appellant failed to raise his particular new weight theories before the trial court and the trial court did not, therefore, review the new theories and weigh the evidence according to it, there is no discretion for this Court to review.").

Additionally, Appellant's theory that the weight of the evidence suggests that he was wrongly convicted of two counts of corruption of minors for one act is a rehash of his challenge to the sufficiency of the evidence to convict him of those charges. Again, we decline to address this allegation of error.

Appellant's final two issues concern his sentence. First, Appellant asserts that the sentencing court erred by failing to merge the convictions of rape of a child and indecent assault for sentencing purposes.

Whether Appellant's crimes should have merged for sentencing implicates the legality of sentencing, not its discretionary aspects. Unlike the discretionary aspects of sentencing, a challenge to the legality of sentence is not subject to waiver and may be raised at any time. *Commonwealth v. Kitchen*, 814 A.2d 209, 214 (Pa. Super. 2002). Our standard of review is *de novo*, and our scope of review is plenary. *Commonwealth v. Sarvey*, 199 A.3d 436, 447–448 (Pa. Super. 2018).

The statute governing merger of sentences provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. Section 9765 "prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." *Commonwealth v. Brown*, 159 A.3d 531, 532–533 (Pa. Super. 2017) (quoting *Commonwealth v. Baldwin*, 985 A.2d 830, 833 (Pa. 2009)).

The trial court dismissed Appellant's merger claim based upon the following rationale:

> Rape of a Child requires the Commonwealth to prove [Appellant] engaged in sexual intercourse with the victim who, at the time, was less than 13 years of age. *See* 18 Pa.C.S. §3121 (c). Indecent Assault of a Child requires the Commonwealth to prove [Appellant] had "indecent contact" with the victim, or caused her to have indecent contact with him, at a time when she was less than 13 years of age. *See* 18 Pa.C.S. §3126(a)(7). "Indecent contact" is defined as, "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." *See* 18 Pa.C.S. § 3101 (relating to Definitions). It is clear that each of these offenses contain an element the other does not.
>
> Rape of a Child requires proof of "sexual intercourse." Indecent Assault of a Child does not require proof of "sexual intercourse." Indecent Assault of a Child requires "indecent contact," which necessitates proof that the contact was for the purpose of arousing or gratifying sexual desire in any person. Rape of a Child does not require proof that the purpose is to arouse or gratify sexual desire in any person. Since each crime requires proof of an element the other does not, 42 Pa.C.S. § 9765 prohibits merger for one sentence.

Trial Court Opinion, 7/31/19, at 20–21.

Appellant contends that the rape of a child and indecent assault convictions merge for sentencing because "[f]or each count only a single act of sexual intercourse was alleged. The elements of indecent contact with a complainant less than 13 years of age are included within the elements of rape of a child." Appellant's Brief at 21. Appellant, however, offers no comparison of the elements of the respective crimes.

In *Commonwealth v. Allen*, 856 A.2d 1251 (Pa. Super. 2004), this Court examined whether the offenses of indecent assault and aggravated

indecent assault were greater and lesser-included offenses, and, if so, whether they merged for sentencing. We concluded that the offenses were not greater and lesser-included offenses, reasoning:

> Aggravated indecent assault is defined as penetration, however slight, of the genitals or anus of the victim with a part of the offender's body for any purpose other than good faith medical, hygienic, or law enforcement procedures if the victim is less than 13 years of age. 18 Pa.C.S.A. § 3125. Indecent assault is defined as indecent contact with the victim if the victim is less than 13 years of age. 18 Pa.C.S.A. § 3126. 18 Pa.C.S.A. § 3101 defines "indecent contact" as any touching of the sexual or other intimate parts of the victim for the purpose of arousing or gratifying sexual desire in either person.
>
> Aggravated indecent assault includes an element that is not required to commit indecent assault. That element is penetration of the genitals or anus of the victim. Indecent assault includes an element that is not required to commit aggravated indecent assault. That element is proof of arousing or gratifying sexual desire.
>
> Since each crime has an additional element not included in the other crime, neither is a lesser-included offense of the other.

*Allen*, 856 A.2d at 1253–1254.

Relying on *Allen*, we agree with the trial court's disposition of the merger issue.[7] While the convictions for rape of a child and indecent assault

_____

[7] We are cognizant of contrary authority. In **Commonwealth v. Lomax**, 8 A.3d 1264 (Pa. Super. 2010), this Court concluded that when convictions for rape of a child and indecent assault were founded on a single set of facts, the convictions should merge for sentencing. *Id*. at 1268. In reaching this conclusion, the **Lomax** Court observed, "the sexual intercourse element of rape of a child was based on the touching of Appellant's and [the victim's] genitals. Meanwhile, indecent assault was founded on Appellant's indecent

- 21 -

were grounded in the same facts, all of the statutory elements of rape of a child are not included in the statutory elements indecent assault. Rape of a child requires proof of sexual intercourse, *i.e.*, some penetration, indecent assault does not. Indecent assault compels proof that the purpose of the contact was for sexual gratification, rape of a child has no such component. Merger of these convictions for sentencing purposes, therefore, is unwarranted under 42 Pa.C.S. § 9765. Appellant is not entitled to relief on - this claim.

Appellant also avers in his appellate brief that he cannot be convicted and sentenced on both corruption of minors offenses. This was not an issue raised in either Appellant's post-sentence motion, Rule 1925(b) statement, or included in the Statement of Questions Presented portion of his brief. However, as the issue appears to implicate the legality of his sentence, we will briefly entertain this argument.

As discussed above, Appellant failed to cite any legal authority to support his theory that a finding of a course of conduct necessitates a conclusion that he could not be convicted of multiple corruption offenses. We

---

contact with, or "touching of the sexual . . . parts" of [victim]. There are no additional elements required to satisfy either crime." *Id*.

The *Lomax* Court did not discuss either the penetration element required for a rape of a child conviction, but not an element of proof of an indecent assault, or the sexual gratification element required for the indecent assault conviction, but not an element of proof for rape of a child. Therefore, we do not find *Lomax* persuasive in the matter *sub judice*.

dismiss this argument as specious, again noting that the two corruption of minors charges were premised on two distinct incidents.

Appellant's final claim of error is that the sentencing court imposed a manifestly excessive sentence. As such, Appellant is challenging the discretionary aspects of his sentence. *See Commonwealth v. Lutes*, 793 A.2d 949, 964 (Pa. Super. 2002) (stating claim that sentence is manifestly excessive challenges discretionary aspects of sentencing). Additionally, the claim that a sentence is excessive because sentences were imposed consecutively challenges the discretionary aspects of sentence. *See Commonwealth v. Gonzalez-Dejusus*, 994 A.2d 595, 598 (Pa. Super. 2010) (finding claim that aggregate sentence involving imposition of consecutive sentences was excessive challenged discretionary aspects of sentencing).

When reaching the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine:

> (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720 [and 708(E)], (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa. Super. 2007) (citation omitted).

Appellant has satisfied the first two requirements. Appellant, however, has failed to include a Rule 2119(f) statement in his brief. This failure statement does not automatically waive an appellant's argument; we are precluded from reaching the merits of the claim when the Commonwealth lodges an objection to the omission of the statement. *Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. 2006). Instantly, we decline to find waiver based on Appellant's omission of a Rule 2119(f) statement because the Commonwealth did not object to the omission.

Thus, we must determine whether Appellant has presented a substantial question that his sentence is inappropriate under the Sentencing Code. We have outlined the following guidelines to determine whether an appellant has identified a substantial question:

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citations omitted).

Appellant acknowledges that minimum term of forty-four years of confinement for the two rape convictions was within the standard guideline range. He also concedes that the sentencing court considered all of the 42 Pa.C.S. § 9721(b) factors set forth in imposing his sentence. Appellant's

excessiveness claim is thus reasoned by the following: he is thirty-nine years old, the minimum sentence is "essentially a life sentence" and "manifestly excessive in the specific circumstances of this case." Appellant's Brief at 22.

In **Commonwealth v. Dodge**, 77 A.3d 1263 (Pa. Super. 2013) we explained:

> [A] defendant **may** raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question. **See** **Commonwealth v. Moury**, 992 A.2d [at 171–172] ("The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.").

**Dodge**, 77 A.3d at 1270 (emphasis in original) (citations omitted). We cautioned, however, that a defendant does not raise a substantial question "where the facts of the case [being reviewed] do not warrant the conclusion that there is a plausible argument that the sentence is *prima facie* excessive based on the criminal conduct involved." **Id**. at 1271.

Appellant herein has failed to advance a credible argument that this case involves circumstances where the imposition of consecutive sentences was disproportionate to the criminal conduct at issue. Without specification, he alleges that his sentence was excessive given the specific facts of the case. Appellant completely ignores the disturbing and heinous record facts, including C.B.'s young age, her biological relationship to Appellant, C.B.'s

- 25 -

resultant serious psychological issues, and Appellant's threats to kill C.B. if she reported the assaults. Consequently, having failed to raise a substantial question, a review of the merits of Appellant's challenge to the discretionary aspects of his sentence is unwarranted, and the trial court's judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/28/2020